## HUNT et al., complainants, vs. THORN et al., defendants.

K. and T. having mutual claims derived from distinct sources, to certain real estate the title of which depended upon a release or confirmation to be obtained from the General Government, entered into a mutual agreement under seal, reciting fully their respective claims to the estate and agreeing to share equally in it, if the title should be confirmed, or in the money or compensation which might be awarded by Government in lieu of it. The claim having been subsequently confirmed, and T. having obtained a patent in his own name, the heirs of K. (he having died in the meantime) filed their bill against T. for a specific performance.

Held: That inasmuch as the agreement recited fully the respective interests of the parties in the estate, T. could not excuse himself from a specific performance on the ground of K.'s inequality of interest in the estate, at the time of making the agreement.

A defendant cannot resist the specific performance of a contract, on the plea that his expectations of aid in money, &c., from the other party, formed the sole inducement and consideration to him of entering into the contract, where it appears that these expectations were merely the operations of the defendant's mind and not raised by any promise or suggestion of the other party.

Matters of defense set up in the answer which are not responsive to the bill, cannot avail as a defense unless proved.

It is not competent to prove the admissions of a party made fifteen years previous, to vary the terms of a written contract.

An administrator has no authority as such to waive or release a contract relating to real estate, unless the personal property of the deceased is insufficient to pay his debts, and then only by an order of the Judge of Probate duly obtained.

A party who has enjoyed the use of estate and of moneys arising from sales of parcels of an estate which he had covenanted to share jointly with another, cannot object the lapse of time where the complainant filed his bill for specific performance thirteen years after his rights accrued, there being no fraud or unfairness imputed to him.

Appeal from the Circuit Court for the county of St. Clair; In Chancery. Bill for specific performance.

On the second day of April, 1827, Thomas S. Knapp purchased of one Henry Jermain, by warranty deed, a tract of land containing fifty-three acres at the confluence of the Black and St. Clair rivers; being the same premises that were claimed by said Jermain as husband to Mary Racine Jermain, sole heir at law of John Baptiste Racine, deceased, whose claim to the premises had been proved before the board of United States Land Commissioners, for adjusting land claims in the Territory of Michigan, and reported by them for confirmation by act of Congress. The deed was not signed by the wife of Jermain.

On the 16th of December, 1832, John Thorn purchased of said Mary Racine Jermain, wife of said Henry Jermain, her interest in all the tract of land confirmed to her by the board of commissioners,

which contained 480 acres, by deed of assignment.   The land or claim to land deeded by her to Thorn, embraced the 53 acres deeded to Knapp, by the husband of Mary.

On the 7th of May, 1833, Knapp and Thorn entered into an agreement, in the form of a bond, under their hands and seals, by which they were respectively bound to each other in the penal sum of $4,000, in which it is recited that "whereas Knapp had obtained of Henry Jermain a deed of land at the confluence of the Black River with the St. Clair river, bearing date the 2d April, 1827, and which lands were claimed of the United States in the name of Mary R. Jermain, his wife, in her own right as sole heir of the estate of John Baptiste Racine, and whereas, the said John Thorn had obtained of the said Mary R. Jermain, a transfer or assignment of the whole claim, as entered before the commissioners, amounting to 480 acres, being six acres in front and upon the St. Clair river, and eighty in depth, which transfer bears date the 16th December, 1832;" it was then further recited "that for the better and more effectual adjusting and concluding all matters and things relative to the above mentioned claim, or to the lands therein mentioned, or intended to be conveyed by the said Henry Jermain and Mary his wife, by their several deeds, transfers or assignments, they the said Thomas S. Knapp and John Thorn, did mutually covenant and agree each with the other, that in the final result and conclusion, whatever may be the satisfaction, remuneration or compensation made by the United States in lieu of said claim or the lands thereunto belonging, or intended to be deeded, assigned or transferred by each of the several instruments hereinbefore mentioned and set forth, severally executed by the said Henry and his wife, shall be fairly and equally owned and divided between the said Thomas and the said John, whether it be in land or in money or in other valuable consideration."

Knapp died in August, 1834.   In June, 1836, Thorn obtained a patent for the land in his own name, and afterwards laid out a portion of it into village lots, several of which he sold, and up to the time of filing the bill of complainants, in 1849, had received a large amount of money for the lots so sold, and for rents; and he refused to deed any portion of the land to the heirs of Knapp.

The bill was filed by the heirs of Knapp, one of whom was a minor, and sued by her next friend, her brother, and the administrator of Knapp. It prays a just division of the lands, according to the bond above recited, an account of sales of lots, and of Thorn's dealings in relation thereto, as trustee, and contains a prayer for general relief.

The answer admits that the complainants (except Owen, who prosecutes as administrator of Knapp) are the heirs of Knapp, and admits the conveyance by Jermain to Knapp, as set forth in the bill of complaint, but denies that the conveyance is of any force or effect, as the land belonged to Mary Jermain, the pretended wife of Jermain, and he died before Mary conveyed to the defendant, and therefore no legal interest passed to Knapp. It admits the purchase by defendant, of Mary Jermain, as stated in the bill, and denies that Knapp paid any part of the purchase money, and claims that the deed to defendant from Mary, was made after the confirmation by the commissioners, while Knapp's purchase of Jermain was made before the confirmation. It does not admit Mary to have been the wife of Jermain. It admits the agreement with Knapp, as set out in the bill, but denies that Knapp had any interest in the land until the agreement was entered into, and claims that the only inducement to J. for entering into such agreement, was the consideration that Knapp resided in Detroit, was active in business, had capital, and it was the expectation of defendant that he was to render his personal and pecuniary aid in getting a title from government, and getting the land clear of the reservation for military purposes; but the whole object failed, as Knapp died a year after, without having done or paid anything, and defendant had to do all that was done, in getting the title to the premises; and that, therefore, complainants are entitled to no relief, but should be left to their remedy at law. That after Knapp died, defendant received fifty dollars of his widow, to enable him to prosecute the claim to the land; but he received it under a promise from the widow that she would make further advances for the same purpose, which she afterwards refused to do.

Other matters of defense are set up in the answer, all of which, together with the facts proved, sufficiently appear, in the opinion of the Court.

*Van Dyke & Emmons*, for complainants.

*Backus*, for defendants.

By the Court, WING, J.

The agreement between Thomas S. Knapp and John Thorn, as set forth in the bill, is fully admitted by the defendant Thorn, in his answer. It is upon this agreement that the complainants, as heirs of Knapp, base all their equities. To meet and overthrow these equities, which spring out of the agreement as admitted, the defendant sets up various matters, which the complainants insist are not responsive to the bill, and they further insist that they have not been sustained by the proof in the case.

We will briefly recapitulate the grounds of defense, as set up by the defendant in his answer. They are,

1. That Henry Jermain had not, at the time he deeded the lands in question, to Knapp, any interest in them, which he could convey; and if he had, he died before Mrs. Jermain deeded to Thorn, which left the whole estate in the lands, both legal and equitable, in her, and she conveyed the whole to Thorn, and therefore Knapp had no title or claim to the land at the time the bond between him and Thorn was executed; the agreement or bond was voluntary, and without consideration; unequal and unjust, and such an one as this Court would not specifically enforce, though good at law.

2. Thorn was poor and without influence, at the time of entering into the agreement or bond; Knapp was a man of property; was active in business, and influential; and the sole inducement to the contract on the part of Thorn, was the consideration that he might be aided by the wealth and influence of Knapp, in procuring the title from the United States; but that by the death of Knapp, before anything was done towards obtaining the title, all the objects of defendant, and all the inducements which operated upon his mind in executing the bond, were defeated.

3. That Mrs. Knapp, the administratrix, abandoned the contract, and waived and relinquished all the rights of the heirs of her husband, to the lands therein described.

4. That complainants, by their own laches in laying by so long, have lost their rights in the land, if they ever had any.

For these reasons, and for others deduced from them as matters of law, the defendant insists the bill should be dismissed and the complainant be remitted to his remedy at law.

We do not perceive that these several matters, so far as the supposed facts go, are responsive to the bill. There is no allusion to them in the bond or the bill. The defendant admits the execution of the bond, and that he has obtained a patent for the land. He admits the case made by the bill, and sets up other matters outside of the complainants case, by way of defense to the bill, and if they are available to him, they must be proved.

It will be perceived that Thorn does not insist, in his answer, that the bond does not embrace the whole of the actual agreements between Knapp and himself, as they both intended it should be stated in the bond. There is no assertion that Thorn was deceived or misled by Knapp, or that he was ignorant of any fact having a bearing upon their negotiations or agreement, of which Knapp had knowledge or which then existed. It is difficult to understand what is the precise scope of the defendant's claim upon this point. It is not asserted in the answer, that at the time the bond was executed, there was any conversation between the parties to it in relation to its provisions, or their previous verbal understandings or agreements, or their future operations, or their intentions, or as to what should be stated in the bond as their agreement. It is not stated that the parties or either of them were present when it was written, nor who wrote it, nor who gave the instructions to the attorney as to what he should insert in it, nor whether anything was said by any one at the time it was executed as to any of its provisions. What the defendant insists upon is, that "the sole inducement to him for executing the bond and thereby giving to Knapp an interest in the land was the consideration that Knapp, at the date of the bond, resided in Detroit, and was an active business man and had considerable capital at his control, and was to render his personal and pecuniary aid in getting said claim allowed, and the premises separated and disencumbered from the reservation for military purposes, attached to Fort Gratiot, of which the said premises formed a part; that

28

Knapp was to apply his personal efforts and pecuniary means; that the whole object of the agreement failed, as also the entire consideration thereof; that Knapp died about a year after the bond was executed, and up to the time of his death had never done anything either by personal efforts or by supplying any means to defray expenses in perfecting the title to said claim; that the object and sole consideration of this defendant in associating the said Knapp with him in said claim by the execution of the bond, was to secure his aid and means, and especially his personal exertions in perfecting the same, as aforesaid, at Detroit and in Washington, the defendant residing in St. Clair county, at Black River, a remote place; but the whole consideration failed by the decease of Knapp, who had done nothing and expended nothing in the consummation of the title to said claim, but the whole remained to be done and was done by the defendant as to the fifty-acres or more embraced in the patent, at great trouble and expense, and by reason thereof, neither the said Knapp nor complainants were or are in equity and justice entitled to any portion of said premises so acquired by said defendant with his own means and without the aid or assistance of said Knapp, as was intended and contemplated at the time of the execution of said instrument."

We have given the answer of the defendant in full on this point for the sake of accuracy. In speaking of the inducement which operated upon his mind, the defendant does not say that Knapp suggested any such inducement to him or that anything was ever said to him which presented to his mind the inducement which he states. We can only understand from defendant's statement that, being aware of the position of Knapp in respect to his wealth, residence, business habits and influence, it operated on his mind and formed, with the fact that Knapp was to render his personal and pecuniary aid in getting the claim allowed, &c., the sole consideration and inducement which operated upon defendants mind and led him to execute the bond. Defendant does not assert that Knapp agreed to continue his residence in Detroit, or that he assured defendant he had wealth or influence, or that his business habits were as stated, and thereby induced defendant to execute the bond. The operations of defendant's own mind seem to be stated, and not the propositions and mutual understandings or the suggestions of either of the parties. But it may be assumed that the defendant intended,

(judging from his entire statement as given by us,) to say that the sole consideration which moved the defendant to associate Knapp with himself in the ownership of the claim, was that Knapp should employ his personal and pecuniary aid at Detroit and in Washington, in perfecting the title to the land, and that the whole consideration failed by the death of Knapp, before he had done anything in furtherance of the object. We do not understand the defendant to say that Knapp was to do this without aid from Thorn. We think that by a fair construction of the bond each party to it was bound to contribute his time and means to perfect the title, or pay his proportion to the other, but the bond does not import that that was the consideration for the undertaking, of either party.

It may be gathered from the evidence, aside from the bond, that Knapp had purchased the interest of Henry Jermain, in the fifty-three acre tract of land at Port Huron, confirmed to Mary Jermain, his wife, by the United States Land Board, but that owing to the difficulty which existed between Knapp and the wife, he could not negotiate with her, or get her to sign off, as it is called, and therefore Knapp procured Thorn to go and make the purchase of her; Thorn was to get the wife to sign off, and have half. The evidence of H. Chamberlain shows that Thorn did contract with Mrs. Jermain for her right in the land in the spring of the year 1832, and in the fall of that year, she deeded her interest to him; that he furnished the means to pay her for her claim. But as none of the witnesses are able to prove the terms upon which Thorn and Knapp had agreed the purchase should be made, we cannot say what they were—whether Knapp was to repay Thorn what he might pay, and did so, or whether Thorn was to obtain the deed of Mrs. Jermain at his own expense. The evidence of Burch shows that after the purchase was made, Knapp and Thorn were at his (witness') house, and he heard them conversing about their respective interests in the land. Knapp claimed he was entitled to two-thirds, or three fourths of the purchase, and Thorn admitted he was entitled to one-half, according to the previous verbal agreement between them. The evidence of defendant's other witness, James McGill, shows Knapp was to have half of Thorn's purchase.

Was the contract unequal, and was it a voluntary bond and without consideration? Defendant in support of this defense, relies upon the supposed fact that Knapp had no title. The bond recites the fact that Henry Jermain was the husband of Mary, to whom the land was confirmed, and that Henry had deeded to Knapp; as husband of Mary, he had some interest or right in the land if she had any. If hers was a legal estate, and they had children, he had a life estate. If not, he could control the land during the life of his wife, if he lived so long. In either case, and in case her interest was a mere equity, he had an interest which he could enforce and convey. (See *Clancy's Husband and Wife*, 440.) But to judge of the inequality of interest, we must ascertain what interest Thorn had acquired. He purported to have purchased the interest of Mrs. Jermain in the land. He had obtained her separate deed of the land confirmed to her. This gave him no right; the deed was entirely void if the husband was still alive. That he was not alive does not appear from the admissions of the parties, or the proofs. The only proof on this point is that of Mr. H. Chamberlain: he says when he visited the wife to obtain her deed, she said "her husband was dead, or she supposed he was dead." This evidence was objected to, and it was incompetent evidence to prove the death of the husband, and if competent, it was very inconclusive. It shows the wife was not sure whether or not her husband was dead. The presumption would be that he was still alive, in the absence of any facts from which a contrary presumption could be raised. In this view of the matter, Thorn had no interest at all, and cannot complain of an inequality in the contract.

But there is another view of this matter. Knapp had Jermain's interest in the land, and by reference to the testimony of Burch, E. B. Clark, and Chamberlain, it appears that Thorn did not stand in the position of an independent purchaser in his own behalf, but that he purchased the right of the wife, at the instance of Knapp, as we have stated. Knapp was to have half, at the least, of Thorn's purchase; so that when the parties came together to execute the bond, Knapp's interest was not limited to the interest he had bought of Henry Jermain, but extended also to one-half of that purchased by Thorn, and his interest so far, was the same as Thorn's. The contract was not, therefore, unequal, nor in this respect unjust, so far as Thorn was concerned; complainants might insist it was unequal.

It is quite immaterial what was the relative extent of interest of the respective parties. The bond shows by its recitals, that the parties had mutual claims, and what they were; and the bond and the proof show that the parties understood what they were; there was no surprise, unfairness, imposition, mistake, or undue influence; they understandingly agreed to divide the result of their future labors, in enforcing their respective rights. But putting the case upon the footing on which it is presented by the bond, the parties, with a knowledge of their rights, (which are recited,) undertake to settle them by a compromise. It is implied by the recitals, that the interest of Knapp, acquired from Jermain, was uncertain, because of the uncertainty of Jermain's life; and the interest of both was uncertain, because the government had not finally acted upon the claim; Jermain might live longer than Thorn. There was enough of uncertainty to make it a fair subject of compromise. It required the conveyance of both Jermain and wife, to complete the right in equity to the land, and there is no evidence that either party was actually mistaken or deceived, either as to the law or the facts of the case, or as to the full extent and value of their respective rights. In such a case as this appears to be from the bond as well as the proof, this Court should not refuse to decree a specific performance of the agreement, for the reason that it is unequal or unjust in respect to the grounds we have been considering. (See a full discussion of this subject in 1 *Story's Equity Jurisprudence*, 111, 112, to 137; 3 *Swanston*, 400, 468, 470, '5, '6, '7; *Mortimer* vs. *Coffin*, 1 *Bro. Ch. Rep.*, 156; 4 *Vesey*, 840; *Gibbins* vs. *Caunt, Neal* vs. *Neal*, 17 *Eng. Ch. Cond.*, *R.*, 675; 2 *Atk.*, 592; 1 *P. W.*, 727; 1 *Vesey Sen.*, 450, note 1; 1 *Vernon*, 48; 1 *Ch'y Cases*, 84; and see 11 *Peters R.*, 70; 3 *Sanfords R.*. 279; 2 *Ball & Beatty's R.*, 180; 1 *Fonblanqe E.*, 271, *Laussat's Edit.*, 1835.)

This is not the case of a purchase made by one man of another; Knapp did not purchase of Thorn; they purchased together, as appears by the proof; or, according to the bond, they united their interests, and Thorn by acquiring the patent became the trustee of the heirs of Knapp of one-half. It cannot therefore be said the bond is voluntary and without consideration. The rights of the respective parties, as recited in the bond, forms the consideration for the undertaking of each party,

and we have seen that they need not be equal; but if we look to the proof for the consideration, it will be seen that Thorn's undertaking, so far from being voluntary, was entered into to consummate a previously executed verbal contract, by which the defendant was permitted to become a party in interest in the speculation of Knapp, and the value of the speculation whether present or prospective, formed a valuable and abundant legal consideration for the contract in the bond. The proof fails to establish the fact that Thorn relied upon the influence or wealth of Knapp, or that these considerations induced him to execute the bond.

We will now consider the second ground of defense, embracing what defendant says was the sole inducement and consideration of this contract. It is necessary to a clear understanding of this ground of defense that we should state the proof bearing upon it. The only witness whose evidence lends any support to the answer of defendant in respect to the consideration of the contract, is James McGill. He says Knapp told him, in the winter of 1833–'4, he had entered into a contract with Thorn and had agreed with him, if he would get the wife of Jermain to sign off, he should have half; he offered to sell to witness his half and said he was to be at the expense of getting the patent from the Government. He said Thorn's proportion of the expense was in obtaining the title from Mrs. Jermain and nothing further, and he (Knapp) was to do all the rest.

If we understand the answer rightly, this evidence is broader than the answer. The witness does not say that " Knapp admitted he was to aid by his employment of his means and personal exertions in getting the title," but he was to be at the sole expense and trouble in accomplishing that object. But if we have misconceived the effect of the answer, and defendant intended to say as this witness has said, the statement of the witness is overthrown by the evidence of Chamberlain and the other witnesses. This is the only witness who says that Knapp ever admitted he was bound to be at the sole expense and trouble of prosecuting the claim. It is inconsistent with the repeated admissions of Thorn to the witnesses, as stated by them. In all his subsequent trouble and whilst conversing with various persons, whose evidence we

have upon this subject, he does not claim that Knapp was to be at all the expense and trouble in prosecuting the claim, and when he seems to have made up his mind to resist the claim of the heirs to any portion of the land, and said to E. B. Clark, "if the heirs get any portion of the land they must pay him well for his trouble," he does not intimate that he could protect himself under any such defense as that stated by the witness. We are therefore constrained to say this witness must have misapprehended the statement of Knapp, and, if it was not over-balanced by the other evidence in the case, it is too loose, without regard to its competency, to authorize our acting upon it in a case of this kind. In 2 Johns. Ch. R., 585, it was held that the confessions of a party made thirteeen years before, of a mistake made, were not sufficient. In Gordon *et al.* vs. Hertford *et al.*, (2 *Maddock*, 405,) the Vice Chancellor refused to decree upon the evidence of a single witness who spoke of transactions many years before in order to enforce a written contract. Here the witness testifies to what he says he heard some fifteen years before. Judge Story in 1 Eq. Juris., § 157, in treating of the relief which may be granted in cases of written instruments says: "it will be granted only where there is a plain mistake made out by satisfactory proof. This qualification forbids relief whenever the evidence is loose, equivocal or contradictory, or if in its nature it is open to doubt or to opposing presumptions." If the proof does not support the answer, as we have considered it to be, then the defense set up must fail; but if the consideration of the contract set up by the answer is identical with that stated by the last named witness, it varies not only from the bond, but from the body of the proof in the case.

The defendant seeks not only to set up the understandings and a parol contract of the parties, not embodied in the bond, but the expectations of the parties. Even if it were competent to introduce parol evidence for such purpose, he has failed to prove either. He does not make the offer to show fraud or surprise, but to vary the agreement actually made. We deem it unnecessary to decide whether, if the defendant had proved that the true consideration of his undertaking had been different from that stated in his bond or agreement, it could have been available to him under the rules applicable to such

cases. The bond must be considered as unaffected by any supposed contemporaneous agreements, understandings or expectations.

As to the third ground of defense, we say, if it was true that the administratrix abandoned the contract, it could not affect the heirs whom she does not represent; she could not waive or release the contract; she had no power to do so as administratrix; she had no authority to pay money belonging to the estate, upon a contract, without the order of some Court, and where the payment was not necessary to protect the rights of creditors, and the claim had not been passed upon; the bond concerns real estate.

The proof does not show any release or written waiver of the contract, even if she had the power to execute such an instrument. (1 *Mason Exec.*, 453, 454.) Besides, the defendant has repeatedly admitted to various persons who have proved the fact, that the heirs of Knapp had an interest in the land, and the admission seems to be co-extensive with the rights of the parties, as they are expressed in the bond, and they were made long after the patent was received by defendant; and since the period when defendant claims that by the death of Knapp the contract was forfeited, he received fifty dollars from the widow of Knapp, to enable him to prosecute the claim to the land. It cannot be claimed, under these circumstances, that the defendant can sustain this ground of defense.

It is objected that Owen, the administrator on the estate of Thorn, is made a party, and the defendant claims the same benefit of the objection as he would have had on demurrer.

There is nothing shown in the pleadings or proof, as to the condition of the estate of Knapp. The heirs seek an account. If it shall be found on the final adjustment of this matter, that any allowance is to be made to Thorn, the heirs would be entitled to have the amount previously paid on the obligation of the contract discharged out of the personal assets. (See *Story's Eq. Pl. page* 211, § 177.)

It is further objected that the complainants seek a conveyance of their interest in only a portion of the land embraced by the claim, and patented to Thorn. But as the complainants seem to have limited their claim to an interest in the fifty acre tract, and claim no further interest under the contract, we can see no objection to the decree of the Circuit Court in this respect.

But it is said complainants have lost their rights, by laying by so long. According to the terms of the bond, Knapp, had he lived, would have been entitled to a deed of one-half the land when the patent was received. Either party might prosecute the claim; but when the patent was received, they were each entitled to half, as joint owners. Up to the time of Knapp's death, it is not pretended that there was any forfeiture or laches on his part. The proof shows that defendant has admitted Knapp did all he was able to have done, previous to his death. The complainants could not be guilty of laches while under age, at the least, in such a case as this, where it is not shown that the defendant has been prejudiced by their delay. One of them is but recently of age, and the other is still a minor. We have already said this is not a case where a purchaser lies by, and suffers the person with whom he contracts, to rest under the impression that he has abandoned his bargain, where the purchaser has failed to pay the consideration. It is the case of individuals having joint interests, and where one holds the legal title for the others, and as their trustee. The defendant was under obligation to convey—the duty rested on him—there was no duty incumbent on the heirs which they had omitted, and which could affect their equitable rights. They have not misled the defendant by any *act* indicating an abandonment of their rights. The defendant had been in the enjoyment of the property after he had received the patent, some thirteen years previous to the exhibition of complainants' bill; he has received the moneys derived from extensive sales of lots, (a part of the land,) and has had the entire control of all moneys arising from sales, rents, or otherwise, which are proven to have amounted to a very large sum of money. Instead of being prejudiced, he must have been greatly benefitted by the delay of complainants. If he was put to trouble in raising money to go to Washington, or in defending the title against McDougall and others, he also received large sums of money; and if applied to those objects would have probably been more than sufficient to pay all such expenses. He has laid off a town on the land, but not pursuant to any contract with Knapp or his heirs.

There has been a change of circumstances, but instead of injuring they have greatly benefitted defendant. Complainants owned one-half of the property before the change took place and ought to have had a

title from defendant. He cannot complain that they left him in the profitable management of the property of which he might at any moment have divested himself, as he was bound to have done, without waiving any prior duty or condition to be performed by complainants. The change must have been expected by defendant. Then if the performance of defendant's contract would be unjust or hard, it can only be on the ground that it would be unjust to compel him to do now what he ought to have done long since, and that it would be hard to part with property, the use of which is profitable. I find no cases where a valid obligation resting upon a defendant to convey, not dependent upon any act or duty to be performed by complainant, has been held to fall within any defined legal notion of hardship. In this case the contract is fair and irrevocable on its face. The circumstances or agreements out of which it sprung were fair at the least on the part of Knapp; there was no fraudulent surprise or mistake. The only thing of which defendant can complain is that he had to manage the property alone since the death of Knapp, but this can and should be compensated by proper allowance. Courts incline to this course rather than to defeat the bill, and it will be especially proper in a case where the compensation is to be *retained*, and not to be paid over by the complainant.

The decree of the Circuit Court for the county of St. Clair, in Chancery, must therefore be in all things affirmed, with costs to the appellees.